**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JOSEPH M. CLEARY**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BEN ROBINSON, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1312-PC-489 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable John M. Marnocha, Judge
Cause Nos. 71D02-0303-PC-12 and 71D02-0005-CF-22

**November 17, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Ben Robinson appeals the post-conviction court's denial of his petition for post-conviction relief. Robinson raises one issue for our review, namely, whether the post-conviction court erred when it held that he did not receive ineffective assistance of appellate counsel.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The post-conviction court adopted from Robinson's direct appeal our supreme court's recitation of the relevant facts:

> On the evening of May 6, 2000, Robinson and Michael Carrico left a party together in a Cutlass driven by Carrico, ostensibly to purchase liquor, but did not return. Around 10 p.m., Robinson arrived at the house of Roderick Harmon, his best friend since elementary school, and the two left to buy some marijuana.

> The next day, the police received a report of a naked body, later identified as Harmon, floating in a pond near Lake Shore Estates. The police recovered shell casings on the ground nearby as well as three human teeth, a gold cross necklace, and a plastic cellphone case. Harmon had a fractured jaw and several lacerations and blunt force injuries to his head and face and four teeth were missing. He died from multiple gunshot wounds. Robinson was subsequently charged with murder, felony murder, and robbery as an A felony.

> A witness testified that on the day Harmon's body was found, Robinson showed the witness a blood-stained $20 bill and told her it was "blood money" and that "Mike did something to somebody." Two other witnesses stated that on the same day, they went to Carrico's house and found Carrico cleaning blood from the backseat of the Cutlass. Carrico also showed them a gun, blood-stained money, and a human tooth.

> David "Elijah" Shouse testified that on the day after Harmon's body was found, he drove Robinson and Carrico to a location behind an apartment complex where Robinson and Carrico walked into the woods carrying a shovel and a bag containing a nine-millimeter handgun and

2

magazine, Harmon's cellphone, and Harmon's shoes and sweatshirt. About fifteen minutes later, the two came back carrying only the shovel. Robinson also asked Shouse to give him an alibi for the night of May 6.

Police later recovered the bag and determined that the bullets recovered from Harmon's body had been fired from the handgun in the bag. Carrico had shown the same gun to Shouse on May 7 and others had previously seen it in Robinson's possession.

Robinson told the police that he picked Harmon up around 8 or 9 p.m. on May 6, but dropped him off at 10 or 10:30. Robinson said he was with Shouse the rest of the night, but never mentioned being with Carrico at any point during the evening. Later that day, Robinson was rubbing his shoulder and Carrico's sister jokingly asked if the police had roughed him up during the interview. Robinson replied that he had beaten another person on the head.

Robinson was found guilty of murder, felony murder, and robbery. The court merged the felony murder with the murder conviction, reduced the A felony to a B, and imposed consecutive sentences of fifty-five years for murder and ten years for robbery.

Robinson v. State, 775 N.E.2d 316, 317-18 (Ind. 2002).

Robinson's family retained attorney Marce Gonzalez to appeal his convictions. On appeal, among other things, Robinson contended that he was denied the effective assistance of trial counsel when counsel did not object to the trial court's re-instruction of the jury after the jury, during deliberations, had submitted a question to the court. Our supreme court denied Robinson's ineffective assistance of counsel claim under the prejudice prong of Strickland v. Washington, 466 U.S. 668 (1984), holding that "the cited evidence of Robinson's participation in the murder is overwhelming, including both his own statements and physical evidence." Id. at 319.

Less than a year later, on March 11, 2003, Robinson filed a pro se petition for post-conviction relief. Later, on March 12, 2010, appointed counsel filed an amended

3

petition, which, among other things, alleged that Robinson had received ineffective assistance of appellate counsel because Gonzalez did not raise on appeal all issues related to Robinson's claim of ineffective assistance of trial counsel. Specifically, Robinson first argued that Gonzalez, due to inadequate research, did not raise the issue that trial counsel, Andre Gammage, failed to disclose an alleged conflict of interest, namely, that Gammage had twice represented the victim, Harmon, for marijuana-related offenses, including at the time of Harmon's death. Second, Robinson argued that Gonzalez failed to raise the issue that Gammage was ineffective when he did not object to allegedly improper comments by the prosecutor during the rebuttal portion of final argument.

The post-conviction court held a hearing on Robinson's petition on October 1, 2012. At that hearing, Gonzalez testified that he had made the strategic decision to bring the ineffective assistance of counsel challenge on direct appeal, rather than through a post-conviction petition, because the claim had appeared fully developed in the record. However, Gonzalez further testified that he would not have pursued the ineffective assistance of counsel claim on direct appeal had he known about Gammage's prior representations of Harmon. Instead, he would have raised it during post-conviction proceedings.

Robinson's counsel also asked Gonzalez why he had opted not to raise any issues regarding the prosecutor's comments during rebuttal. Gonzalez replied:

> I've gone over [the comments] several times. And as an officer of the Court, in all candor, after eleven years, I cannot recall[—]I cannot recall what my mind-set was.
>
> There is [sic] two possibilities:

4

> One[] is I recognized potential issues, but decided not to raise them.
>
> Or two, I could have missed them.
>
> But, I cannot tell you in all candor today what my mind-set was eleven years ago in this case.

PCR Tr. at 25-25.

Gammage also testified at the post-conviction hearing. When asked about the alleged conflict of interest, Gammage testified that his usual practice involves disclosure and consent to potential conflicts of interest. However, at the time of the hearing, Gammage could not recall whether he had disclosed his representation of Harmon to Robinson. Moreover, Gammage stated:

> I would say that this situation is a little bit different from the standpoint of the victim in the case is deceased. Sometimes there are situations where[,] if there was a battery or a theft or something of that nature where I may have represented the victim in the case, I would have disclosed to the person that I represent or represented.
>
> So, yeah, I would have[—]if I thought it was relevant, yeah, I would have disclosed it to that person and explain[ed] the situation to them [sic][.]
>
> And I would generally explain[] it from the standpoint of that I'm doing a job and I don't have a real stake in the victim[;] I don't have a personal relationship with the person that I represented, whether a victim or a defendant.
>
> While I have a significant interest in what it is that I'm doing in putting forth my best effort in every case, if I'm representing one individual, I'm representing that individual.
>
> So whatever I know of another individual or represented that individual, that would have no bearing on my representation of the person that I represented at that particular time.

Id. at 11-12.

5

On November 22, 2013,[1] the PCR court denied Robinson's petition. When it did, the court issued written findings of fact and conclusions of law. In relevant part, the court found:

> Because Mr. Gammage did not represent Roderick Harmon at any time during these proceedings, there was no actual conflict of interest. Further, Robinson has failed to establish any adverse [e]ffect with respect to the fact that Mr. Gammage had, in the past, represented Roderick Harmon. . . .
>
> The court, having found that Robinson's trial counsel was not ineffective as to this issue, the court similarly concludes that Robinson's appellate counsel was not ineffective for failing to raise the[] same issue on appeal.
>
> * * *
>
> The portion of the [S]tate's final argument complained of is follows [sic]:
>
>> Think about this ladies and gentlemen: Mr. A and Mr. B pick up Mr. C. Mr. C is sitting in the back of the car, Mr. A is driving, and Mr. B is sitting next to him. Mr. C ends up dead, pumped full of bullets and robbed.
>>
>> Mr. A comes to trial, I didn't have anything to [do] with it, it was all Mr. B. Despite the fact that he was seen with the gun, despite the fact that Mr. A and Mr. B split the money up, despite the fact that Mr. A and Mr. B hid the weapon, despite the fact that they tried to lie to the police, despite the fact that one of them tried to get somebody else to lie to the police; I didn't have anything to do with it.
>>
>> And with this scenario, the jury buys it, okay Mr. A, it must have been Mr. B.

---

[1] Before the court issued its November 22 order denying relief, on April 16, 2013, it scheduled a subsequent evidentiary hearing after it determined that Robinson had failed to present evidence on some of his claims at the October 1 hearing. However, on September 10, Robinson waived the subsequent hearing.

6

Then Mr. B's trial comes up, "Hey, that worked for Mr. A, I think I'll try that same thing. []I didn't have anything to do with it, it was all Mr. A," despite all of those facts.

And the jury goes, "Okay." And then Mr. A and Mr. B walk away a free man [sic].

But who killed [Mr.] C? A ghost?

Ladies and gentlemen, that would be the most absurd and the most unjust result anyone could ever conceive of.

(Trial Transcript pp. 822 - 823[.])

To place this argument into context, it was made in the [S]tate's rebuttal to the defendant's final argument and was preceded with the following statement:

He talked about the lack of proof the defendant engaged in an act in that car. Well, ladies and gentlemen, as I said before there were three people in that car. And the only one that has any interest in telling you really what happened[] is dead. We can't bring him back. You're going to have to make reasonable inferences from the evidence in this case.

And I don't need to prove—the law doesn't tell you that I have to prove who pulled the trigger and how many times they pulled the trigger, because I can't prove that. I can't, because of the circumstances of the case.

The law says that in order to determine whether or not they engaged in these acts—remember my example about the bank robbery. The guy in the car never had a gun, the [guy] in the car never actually took any money like the person that was in the bank, but he is just as guilty of robbery as the person that did all of those things, because they acted together.

Whether or not he shot the victim one or more times, or whether or not he beat the victim; it doesn't matter, so long as you can determine with reason and common sense that he acted together with the person that might have.

(Trial transcript [sic], p. 822) and followed by:

7

> There were two people in that car along with [Harmon], there were two people that murdered him, there were two people that robbed him. And when you gauge what this defendant did before, during[,] and after, you can only come to one reasonable conclusion, that he did participate in this act with Michael Carrico. That is the only conclusion that you can reach.

(Trial Transcript [sic], p. 824[.])

> In his final argument, Mr[.] Gammage argued that it was Robinson's confederate, Michael Carrico, who committed the murder and that Robinson was not acting in concert with Carrico in committing the murder.

(Trial Transcript, pp. 807 - 814[.])

> Based upon the words said, the context of those words, and the facts of this case, the court finds that the statements made by the deputy prosecutor, in final argument, were not improper, were not comments on matters not in evidence, and did not subject Robinson to "grave peril." Accordingly, the court finds that Mr. Gammage was not ineffective for failing to object to the deputy prosecutor's argument.

Appellant's App. at 29-32 (footnotes omitted; emphasis in original). This appeal ensued.

## DISCUSSION AND DECISION

### Overview

Robinson contends that the post-conviction court erred when it determined that he was not denied the effective assistance of appellate counsel. "Post-conviction proceedings do not provide criminal defendants with a 'super-appeal.' Rather, they provide a narrow remedy to raise issues that were not known at the time of the original trial or were unavailable on direct appeal." Garrett v. State, 992 N.E.2d 710, 718 (Ind. 2013). These proceedings do not "provide a means whereby one convicted could repeatedly re-litigate claims of improper conviction or could raise an untimely challenge directed at some aspect of the proceedings against him." Woods v. State, 701 N.E.2d

8

1208, 1213 (Ind. 1998) (quoting Langley v. State, 256 Ind. 199, 267 N.E.2d 538, 540 (1971); quotations omitted). "Issues available but not raised on direct appeal are waived." Garrett, 992 N.E.2d at 718 (quotations omitted). A petitioner has the burden to establish grounds for relief by a preponderance of the evidence. Id. And, "[w]hen appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." Id. Thus, to prevail on the denial of a petition for post-conviction relief on appeal, "a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court." Id.

As pertinent here, a defendant may raise a claim of ineffective assistance of trial counsel for the first time on direct appeal or in a post-conviction proceeding, but "once the defendant chooses to raise his claim of ineffective assistance of trial counsel (either on direct appeal or post-conviction), he must raise all issues relating to that claim, whether record-based or otherwise." Timberlake v. State, 753 N.E.2d 591, 602 (Ind. 2001) (quoting Ben-Yisrayl v. State, 738 N.E.2d 253, 259 (Ind. 2000)). In other words, one "who chooses to raise on direct appeal a claim of ineffective assistance of trial counsel is foreclosed from relitigating that claim." Id. Thus, where one raised an incomplete claim of ineffective assistance of trial counsel on direct appeal, he is limited in post-conviction proceedings to challenging the "ineffective assistance of his appellate counsel in presenting or omitting issues bearing on his claim of ineffective assistance of trial counsel." Id. at 598.

"To establish a post-conviction claim alleging violation of the Sixth Amendment right to effective assistance of counsel, a defendant must establish the two components set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984)." <u>Garrett</u>, 992 N.E.2d at 718.

> First, a defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that counsel made errors so serious that counsel was not functioning as counsel guaranteed to the defendant by the Sixth Amendment. Second, a defendant must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, meaning a trial whose result is reliable. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is one that is sufficient to undermine confidence in the outcome.

<u>Id.</u> at 718-19.

As our supreme court has stated, Indiana courts recognize "three categories of alleged appellate counsel ineffectiveness: (1) denying access to an appeal, (2) failing to raise issues, and (3) failing to present issues competently." <u>Timberlake</u>, 753 N.E.2d at 604. But, "[c]ounsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Id.</u> at 603. We note "that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or most effective way to represent a client." <u>Id.</u> As a result, "[i]solated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective." <u>Id.</u> It is also important to note that "[t]he two prongs of the <u>Strickland</u> test are separate and independent inquiries. Thus, if it is easier to dispose of an

10

ineffectiveness claim on the ground of lack of sufficient prejudice that course should be followed." Id.

Here, Robinson makes two claims under the second Timberlake category in regards to Gonzalez's presentation, on direct appeal, of Robinson's claim of ineffective assistance of trial counsel: (1) Gonzalez rendered ineffective assistance when he failed to present Gammage's alleged undisclosed conflict of interest; and (2) Gonzalez rendered ineffective assistance when he failed to argue that Gammage acted ineffectively when Gammage did not object to the State's final argument. As our supreme court has stated:

> To show that counsel was ineffective for failing to raise an issue on appeal thus resulting in waiver for collateral review, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential. To evaluate the performance prong when counsel waived issues upon appeal, we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are clearly stronger than the raised issues. If the analysis under this test demonstrates deficient performance, then we evaluate the prejudice prong which requires an examination of whether the issues which appellate counsel failed to raise would have been clearly more likely to result in reversal or an order for a new trial.

Garrett, 993 N.E.2d at 724 (citations and quotations omitted). Further:

> When the claim of ineffective assistance is directed at appellate counsel for failing fully and properly to raise and support a claim of ineffective assistance of trial counsel, a defendant faces a compound burden on post[-]conviction. The post[-]conviction court must conclude that appellate counsel's performance was deficient and that, but for the deficiency of appellate counsel, trial counsel's performance would have been found deficient and prejudicial. Thus, [petitioner's] burden before the post[-]conviction court was to establish the two elements of ineffective assistance of counsel separately as to both trial and appellate counsel.

Timberlake, 753 N.E.2d at 604. We address each issue Robinson presents in turn.

**Conflict of Interest**

Robinson first argues that Gonzalez was ineffective because he failed to look outside of the record and, therefore, did not discover Gammage's alleged conflict of interest. But "there is no constitutional requirement for appellate counsel to search outside the record for error." Woods, 701 N.E.2d at 1222. Thus, "an ineffective assistance of appellate counsel claim that is in substance a trial counsel claim requiring extrinsic evidence may be dead on arrival." Id. Such is the case here. Gonzalez investigated trial counsel's effectiveness through a thorough review of the record. Therefore, Gonzalez "acted consistent with accepted practice then prevailing." Id. (citations and quotations omitted).

Even if we were to look past Gonzalez's representation and consider Gammage's, because Robinson failed to object to the conflict of interest at trial, he "must demonstrate that trial counsel had an actual conflict of interest and that the conflict adversely affected counsel's performance." Woods, 701 N.E.2d at 1223.

> An adverse effect on performance caused by counsel's failure to act requires a showing of (1) a plausible strategy or tactic that was not followed but might have been pursued; and (2) an inconsistency between that strategy or tactic and counsel's other loyalties, or that the alternate strategy or tactic was not undertaken due to the conflict.

Id. "Once the two prongs . . . are met—actual conflict and adverse impact—prejudice is presumed." Id.

Assuming only for the sake of argument that an actual conflict of interest existed, however, Robinson has not demonstrated how that conflict adversely affected Gammage's performance. He has not proffered a plausible alternative defense strategy,

12

much less that Gammage neglected to pursue such a strategy as a result of his prior unrelated representation of Harmon. Instead, Robinson attempts to extrapolate from the case law that, because prejudice may be presumed, we may also presume adverse impact. In other words, Robinson would have us conclude, without showing any adverse impact, that the alleged conflict of interest amounts to a per se denial of counsel. But this is not the law. See Woods, 701 N.E.2d at 1223. As a result, Robinson failed to meet his "compound burden." Timberlake, 753 N.E.2d at 604. He has not shown any adverse impact on the part of Gammage, and, consequently, Gonzalez did not render ineffective assistance of counsel when he did not pursue this issue on direct appeal.

### Failure to Object

Robinson next contends that Gonzalez was ineffective for not raising Gammage's failure to object to certain remarks made by the prosecutor during the rebuttal portion of final argument. However, our supreme court concluded that "the cited evidence of Robinson's participation in the murder is overwhelming, including both his own statements and physical evidence." Robinson, 775 N.E.2d at 319. As a result, we also "find no reasonable probability that [the alleged prosecutorial misconduct] affected the jury's verdict." Id. In other words, because "it is easier to dispose of [Robinson's] ineffectiveness claim on the ground of lack of sufficient prejudice," we do so here. Timberlake, 753 N.E.2d at 603. Thus, we hold that Robinson has not met his burden on this issue. Accordingly, Gonzalez was not ineffective when he did not raise this issue on direct appeal.

13

Affirmed.

BAILEY, J., and PYLE, J., concur.