## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 23 2019, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nicholas F. Wallace
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert A. Rowlett
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kathleen G. Theriot,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

July 23, 2019

Court of Appeals Case No.
18A-CR-2660

Appeal from the Allen Superior Court

The Honorable John F. Surbeck, Jr., Judge

Trial Court Cause No.
02D06-1709-F3-49

**Tavitas, Judge.**

# Case Summary

Kathleen Theriot appeals her sixteen-year sentence after she was convicted of aggravated battery, a Level 3 felony. We affirm.

# Issues

Theriot raises two issues on appeal, which we restate as:

> I. Whether the trial court abused its discretion in determining the aggravating and mitigating factors in imposing Theriot's sentence.
>
> II. Whether Theriot's sentence is inappropriate in light of the nature of her offense and her character.

# Facts

Theriot and Dexter Eckwood were in a relationship for fourteen years and shared an apartment. During the late hours of September 12, 2017, and early hours of September 13, 2017, the couple argued. According to their neighbor, Maria Dlabay, it was common to hear the couple arguing. At approximately 12:30 a.m. on September 13, 2017, Theriot stabbed Eckwood twice in the abdomen with a knife.

After the stabbing, the couple's argument continued outside of their apartment. Dlabay then heard the couple arguing about whether Eckwood took $300.00 from the couple's bedroom dresser drawer. Dlabay heard Eckwood say, "you stabbed me, you b****[,]" in a panicked voice. Tr. Vol. I pp. 146-47. Dlabay also heard Theriot tell Eckwood that, if he attempted to call the police, she would tell them that he stabbed himself.

[5] At approximately 3:00 a.m., Eckwood knocked on Dlabay's door asking for help, but Dlabay did not answer. Since the couple continued to argue, Dlabay did not think anything was seriously wrong. Theriot eventually called 911 to report Eckwood's injuries approximately two-and-one-half hours after she stabbed him. The couple continued to argue until the police and paramedics arrived.

[6] The paramedics found Eckwood on the floor of the couple's living room. He was responsive and initially refused medical treatment, but the paramedics convinced him to receive treatment. Sergeant Adams of the Allen County Sheriff's Department requested that Theriot be placed in the back of a squad car. As Theriot walked to the car, she told an officer that Eckwood grabbed her hand and put the knife in her hand, so that Theriot's fingerprints would be on the knife.

[7] In the ambulance, paramedics asked Eckwood if he tried to commit suicide. Eckwood responded four times: "[N]o, my old lady did it." Tr. Vol. II p. 25. On the way to the hospital, Eckwood's heart rate and breathing decreased. One of Eckwood's wounds was less than one inch deep, while the other wound penetrated Eckwood's abdominal muscle, part of his liver, and his inferior vena cava, which resulted in severe blood loss. Eckwood died at the hospital as a result of his injuries.

[8] On September 19, 2017, the State charged Theriot with aggravated battery, a Level 3 felony. A jury found Theriot guilty. At sentencing, Theriot asked the

trial court to consider the factors listed in presentence memorandum ("the Memorandum") prepared by the Allen County's Public Defender's Office in imposing her sentence.[1] The factors in the Memorandum related to Theriot's history of substance abuse and her history as an assault victim.[2] At sentencing, the State argued:

> [Y]our Honor, her criminal history begins in '87. . . .
>
> * * * * *
>
> Prior attempts of rehabilitation have failed. She's had suspended sentences, unsupervised probation, Alcohol Countermeasures program, Treatment Alternatives to Street Crime, Brown and Associates, addictions program, community addictions program, community service twice, supervised probation, home detention, short jail sentences, longer jail sentences, Department of Corrections, and [p]arole. She's at a moderate risk to re-offend.
>
> The facts and circumstances of this case are aggravating. She stabbed the victim and rather than getting him help immediately which could of [sic] possibly saved his life[,] she tells him that she will tell the police that he tried to kill himself if he tried to call for help. Her words on the initial call was [sic] because he was bleeding all over her apartment. Mr. Eckwood died, that is extremely aggravating. That is - the injury in this case is far in excess of what we needed to prove to prove [a]ggravated [b]attery. For [a]ggravated [b]attery we only have to prove the

---

[1] The Memorandum, prepared by the Allen County's Public Defender's Office, is not the presentence investigation report, which was prepared by the Allen County Adult probation department.

[2] The Memorandum also details Theriot's and Eckwood's abusive relationship.

substantial risk of that. There's no greater proof of that than the fact that he actually died.

Sent. Tr. Vol. I pp. 11-12. After the State made its argument, the trial court asked Theriot if there was anything that she wanted to say before sentencing. Immediately following Theriot's statement of remorse, the trial court made its sentencing statement. In addressing the State's argument, the trial court remarked:

> It is apparent that [ ] Theriot had a terrible childhood, and on the other hand that does not excuse the death.
>
> * * * * *
>
> [T]he aggravating circumstances far outweigh the mitigating circumstances. I agree with counsel. But there are significant mitigating circumstances as well, specifically in the hardships which this woman endured in her young life, but as I sa[id] that doesn't justify the end result here.

*Id.* at 13. The trial court did not restate the factors it found to be aggravating. The trial court sentenced Theriot to sixteen years, with nine years executed, seven years suspended, and four years on probation. Theriot now appeals her sentence.

# Analysis

## *I. Abuse of Discretion*

[9] Theriot argues that the trial court failed to identify aggravating factors to support its enhancement of the advisory sentence and failed to give adequate weight to her proposed mitigating factors. Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* An abuse of discretion will be found where the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

[10] A trial court may abuse its discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id.* at 490-91.

[11] In reviewing a sentencing order, an appellate court may consider both the trial court's written and oral statements. *Gleason v. State*, 965 N.E.2d 702, 710 (Ind. Ct. App. 2012) (citing *McElroy v. State*, 865 N.E.2d 584, 589 (Ind. 2007)). A trial court's sentencing statement must: "'(1) identify all of the significant mitigating and aggravating circumstances; (2) state the specific reason why each

circumstance ha[d] been determined to be mitigating or aggravating; and (3) articulate the court's evaluation and balancing of circumstances.'" *Anglemyer,* 868 N.E.2d at 486 (quoting *Prickett v. State*, 856 N.E.2d 1203, 1207 (Ind. 2006)).

### *A. Aggravating Factors*

First, we address Theriot's claim that the trial court failed to identify the aggravating factors it relied upon in imposing her enhanced sentence. If a trial court abuses its discretion by improperly considering an aggravating factor, we need to remand for resentencing only "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Anglemyer,* 868 N.E.2d at 491.

During the sentencing hearing, the State argued that: (1) Theriot's criminal history; (2) Theriot's failed prior attempts of rehabilitation; (3) the facts and circumstances of the case; and (4) Eckwood's death, should all be considered as aggravating factors. The trial court agreed with the State's argument and remarked that Theriot's "terrible childhood" did "not excuse [Eckwood's] death." Sent. Tr. Vol. I p. 12. We note that the trial court did not issue a written sentencing statement that identified the aggravating factors. In the trial court's oral sentencing statement, the trial court did discuss the nature of the offense as an aggravating factor in Theriot's sentence. While a written sentencing detailing the aggravators and mitigators is helpful for our review, an oral statement may be sufficient. Still, even when making an oral sentencing statement, we encourage the trial court to clearly state its considerations in applying the aggravating and mitigating factors.

[14]  One aggravating factor alone can be sufficient to justify increasing Theriot's sentence above the advisory guideline.[3] *See Bacher v. State*, 722 N.E.2d 799, 804 (Ind. Ct. App. 2000) (holding that "[b]ecause a single valid aggravating factor is adequate to justify a sentence enhancement, the sentencing court did not abuse its discretion in enhancing the defendant's sentence").

[15]  When evaluating the nature of the offense, "the trial court may properly consider the particularized circumstances of the factual elements as aggravating factors." *McCarthy v. State*, 749 N.E.2d 528, 539 (Ind. 2001). "To enhance a sentence in this manner, the trial court must detail why the defendant deserves an enhanced sentence under the particular circumstances." *Smith v. State*, 675 N.E.2d 693, 698 (Ind. 2000) (citing *Wethington v. State*, 560 N.E.2d 496, 509 (Ind. 1990).

[16]   In imposing its sentence, the trial court remarked:

> It is apparent that [ ] Theriot had a terrible childhood, and on the other hand that does not excuse the death.
>
> * * * * *
>
> [T]he aggravating circumstances far outweigh the mitigating circumstances. I agree with counsel. But there are significant mitigating circumstances as well, specifically in the hardships

---

[3] Based on the State's argument, it is possible the trial court also found Theriot's criminal history to be an aggravating factor. We, however, will focus on the one aggravator the trial court clearly considered: the nature of the offense.

which this woman endured in her young life, but as I sa[id] that doesn't justify the end result here.

*Id.* at 13.

[17] While the trial court could have spoken in considerably more detail regarding its application of this aggravating factor, it is very clear that the trial court considered the nature of the offense and, in particular, Eckwood's death as an aggravating factor. As the State outlined at the sentencing hearing, Theriot stabbed Eckwood twice and waited two-and-one-half hours to call 911; and Eckwood died as a result of his injuries. Here, Eckwood died, and Theriot was only charged with aggravated battery. It is obvious that the trial court considered Eckwood's death in enhancing Theriot's sentence under the circumstances. After considering the particularized circumstance of Theriot's aggravated battery resulting in Eckwood's death as an aggravating factor, the trial court then weighed it against mitigating circumstances and concluded that it outweighed the mitigating factor of Theriot's "terrible childhood." Sent. Tr. Vol. p. 13. Theriot has not convinced us that the trial court abused its discretion by failing to identify the aggravating circumstances where the trial court clearly considered the nature of her offense as an aggravating factor.

### B. Overlooked Mitigating Factors

[18] Next, Theriot contends that the trial court gave insufficient mitigating weight to the circumstances identified in the Memorandum. She alleges that: (1) her abusive relationship with Eckwood; (2) the gap in her criminal history; and (3)

her history of substance abuse, should have been considered as mitigating factors.

[19] A trial court is not obligated to accept a defendant's claim as to what constitutes a mitigating factor. *Rascoe v. State*, 736 N.E.2d 246, 249 (Ind. 2000). A trial court has discretion to determine whether the factors are mitigating and is not required to explain why the trial court rejects the defendant's proffered mitigating factors. *Haddock v. State*, 800 N.E.2d 242, 245 (Ind. Ct. App. 2003). A claim that the trial court failed to find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 493.

### 1. Abusive Relationship

[20] First, Theriot asserts that the trial court should not have declined to find the couple's abusive relationship to be a mitigating factor. Specifically, Theriot's counsel contends that, "[i]t would have been impossible for [her] to not have that history of abuse running through her mind each and every time the couple got into an argument. The events on September 13, 2017 would have been no different." Appellant's Br. p. 15.

[21] At sentencing, Theriot referenced the Memorandum, which detailed in part that:

> Kathleen met Dexter Eckwood in 2002. . . . About a year after they began a relationship, Kathleen said that Dexter became abusive and that physical violence between them became common place; fueled by the alcohol and drugs. Although

neither was ever arrested for domestic violence against each other, Kathleen indicated that she made more than a few trips to the hospital with lies to cover up the cause of her injuries. Over the 14 years that Kathleen and Dexter were in a relationship, Kathleen suffered a broken elbow that required 7 surgeries to which she still bears the scars today, a broken hand which also required surgery, broken dentures, chipped and broken teeth and more black eyes than she can recall. Police were rarely called because Kathleen said Dexter threatened to kill her and her family if he went to jail and in time[,] he began to threaten to kill himself if she left him.

Appellant's App. Vol. II p. 96.

[22]   In support of her argument, Theriot relies on Indiana Code Section 35-38-1-7.1(b)(11), which provides that:

[A] court may consider the following factor[ ] as [a] mitigating circumstance. . . . The person was convicted of a crime involving the use of force against a person who had repeatedly inflicted physical or sexual abuse upon the convicted person and evidence shows that the convicted person suffered from the effects of battery as a result of the past course of conduct of the individual who is the victim of the crime for which the person was convicted.

The record shows that Theriot and Eckwood were arguing over money when she stabbed him twice. The record does not demonstrate that Theriot's decision to stab Eckwood was due to any domestic violence that occurred that night or for any reason outside of the missing $300.00. To the extent, therefore, that Theriot contends the trial court erred by failing to consider the couple's abusive relationship as a mitigating factor, the connection between Theriot's history of

abuse and her decision to stab Eckwood is not clearly supported by the record. Accordingly, the trial court did not abuse its discretion by declining to find the couple's abusive relationship to be a mitigating factor.

### 2. Gap in Criminal History

Theriot contends that the trial court failed to consider that she "le[d] a law-abiding life for a substantial period before the commission of her crime" as a mitigating factor. Appellant's Br. p. 15. Theriot has an extensive criminal history consisting of eleven misdemeanor convictions—including one other battery conviction—and two felony convictions. The trial court was not required to accept Theriot's contention that she has led a law-abiding life for a substantial period. Our Supreme Court in *Robinson v. State*, 775 N.E.2d 316, 321 (Ind. 2002), *trans. denied*, held that a criminal history consisting of no prior felony convictions, one prior misdemeanor marijuana possession conviction and several traffic infractions, most of which had been dismissed, was "not a criminal history that supports a significant aggravating factor" or a factor requiring to "significant mitigating weight." Theriot's criminal history is far more extensive than Robinson's criminal history. Accordingly, the trial court did not abuse its discretion in declining to find the gap between Theriot's criminal convictions to be a mitigating factor.

### 3. History of Substance Abuse

Theriot claims that the trial court improperly failed to consider her history of substance abuse to be a mitigating factor. She asserts that her "long history of

alcohol and substance abuse is well documented in the presentence memorandum." Appellant's Br. p. 16. The Memorandum details in part that:

> Daily alcohol use was a way of life for Kathleen from age 18 to age 45. She recalls that during the 17 years she worked for Morril Motors, she would get off of work at 3:00 pm. and head to the bar where she would get high in the bathroom and drink until the bar closed. . . .
>
> Kathleen used marijuana steadily for a number of years as well. However, once she got into her 30's she moved on to other drugs. Kathleen took a liking to crack cocaine. She used crack daily for a number of years and would stay clean while she was incarcerated or on community supervision but would go back and use again for short periods of time. Kathleen also traded alcohol for pills in her mid-40's because they were cheaper. She and Dexter could not afford for both of them to be using alcohol or street drugs daily[,] so Kathleen abused pain medications that she received for her chronic back issues. She then turned to synthetic marijuana around the age of 48.
>
> Kathleen has struggled with addiction her entire life and she has been given opportunities to get clean, however, those attempts were almost 20 years ago. Substances have been, in a very mixed up way, her solution and her problem. Her attempts to drown out the trauma she endured simply fueled the fire that led her down a lifetime path of alcohol, drugs, and one abusive relationship after another. This is ultimately why she is in this courtroom today for sentencing.

Appellant's App. Vol. II pp. 5-6.

[25]   The presentence investigation report ("PSI") reflects Theriot's statements that she quit drinking alcohol at the age of forty-four, quit smoking marijuana at age

thirty-nine, quit abusing crack cocaine at age thirty, and quit using Spice/K2 at age fifty. Theriot's counsel contends that "it is very reasonable to assume" that Theriot was under the influence of alcohol and a controlled substance at the time of the stabbing, due to Eckwood's blood alcohol content of .196 and another controlled substance found in his system. Appellant's Br. p. 16. It seems tenuous to use Eckwood's blood alcohol content to demonstrate that Theriot was under the influence of any substances. Not only is there no evidence in the record to support that Theriot was under the influence of any controlled substances on September 13, 2017, there is also no indication that she committed the offense *because* she was then under the influence of alcohol or drugs. *See Healey v. State*, 969 N.E.2d 607, 618 (Ind. Ct. App. 2012) (finding that "the trial court did not abuse its discretion in declining to find [the defendant's] history of substance abuse as a significant mitigating circumstance")*, trans. denied.* Accordingly, the trial court did not abuse its discretion.

### *4. Troubled Childhood*

[26]     Finally, Theriot also argues that the trial court failed to consider her troubled childhood as a mitigating circumstance. We disagree. The trial court found that "there are significant mitigating circumstances . . . specifically in the hardships which this woman endured in her young life." Sent. Tr. Vol. I p. 13. The trial court also noted that Theriot's "troubled childhood" did "not excuse [Eckwood's] death." *Id.* at 12. Accordingly, the trial court did not abuse its

discretion since it did consider Theriot's troubled childhood as a mitigating circumstance.

## II.    *Inappropriate Sentence*

[27]    Finally, we address whether Theriot's sentence is inappropriate. Theriot asks that we review and revise her sentence pursuant to Indiana Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden to persuade this court that his or her sentence is inappropriate. *Wilson v. State*, 966 N.E.2d 1259, 1266 (Ind. Ct. App. 2012) (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)), *trans. denied.*

[28]    In Indiana, trial courts can tailor an appropriate sentence to the circumstances presented; the trial court's judgment receives "considerable deference." *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. Ct. App. 2017) (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. Ct. App. 2008)), *trans. denied.* In conducting our review, we do not look to see whether the defendant's sentence is appropriate or "if another sentence might be more appropriate; rather, the question is whether the sentence imposed is inappropriate." *Sanders*, 71 N.E.3d at 844 (citing *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008)).

[29]    We look to the statutory range established for the classification of the offense. The sentence for a Level 3 felony ranges from three years to sixteen years, with an advisory sentence of nine years. Ind. Code § 35-50-2-5(b). Here, the trial

court imposed a maximum term of sixteen years, with a term of nine years executed. Maximum sentences are generally reserved for the worst offenders, but this category encompasses "a considerable variety of offenses and offenders." *Buchanan v. State*, 767 N.E.2d 967, 973 (Ind. 2002).

[30] Pursuant to Indiana Appellate Rule 7(B), we first review the nature of Theriot's offense. Theriot stabbed Eckwood twice in an argument over $300.00. She waited two-and-one-half hours to call 911 to report Eckwood's injuries. Eckwood died as a result of his injuries. The nature of Theriot's offense is among the worst; her offense and failure to seek medical treatment led to Eckwood's death.

[31] Next, we consider Theriot's character. "When considering the character of the offender, one relevant fact is the defendant's criminal history." *Garcia v. State*, 47 N.E.3d 1249, 1251 (Ind. Ct. App. 2015), *trans. denied.* Theriot has a lengthy criminal history that began in 1987 and does not reflect well upon her character. Her criminal history is comprised of two felony convictions for dealing in cocaine or narcotic drug and escape, as well as eleven misdemeanors, including visiting a common nuisance, operating a motor vehicle while intoxicated, disorderly conduct, public intoxication, battery, three convictions for operating a motor vehicle while suspended, reckless possession of paraphernalia, false informing, and leaving the scene of an accident.

[32] The trial court specifically identified Eckwood's death as an aggravator and identified Theriot's "terrible childhood" as a mitigator. Sent. Tr. Vol. p. 13.

The trial court then weighed the aggravator against the mitigator, determined that a sixteen-year sentence, with nine years executed, was appropriate. While Theriot received the maximum sentence for her conviction, her sentence is not inappropriate.

## Conclusion

[33] The trial court did not abuse its discretion by failing to identify additional aggravating factors or by rejecting Theriot's proposed mitigating factors. Furthermore, Theriot's sentence was not inappropriate in light of the nature of the offense and her character. We affirm.

[34] Affirmed.

Crone, J., and Bradford, J., concur.