Michael CARRICO, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 71S00–0101–CR–17.

Supreme Court of Indiana.

Sept. 20, 2002.

Susan K. Carpenter, Public Defender of Indiana, David P. Freund, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

BOEHM, Justice.

Michael Carrico was convicted of murder and robbery as a B felony. The trial court sentenced him to sixty-five years in prison. In this direct appeal, Carrico contends that the trial court erred by: (1) sentencing Carrico to both murder and robbery in violation of the double jeopardy clause of the Indiana Constitution; (2) admitting autopsy photographs; and (3) finding that the aggravating circumstances outweighed the mitigating circumstances and imposing consecutive sentences. We affirm.

**Factual and Procedural Background**

On May 6, 2000, Michael Carrico, Ben Robinson, and Roderick Harmon were on their way to Mishawaka to buy marijuana. Carrico was driving, Robinson was in the passenger seat, and Harmon was in the back on the passenger side. Although Carrico gave conflicting testimony as to what happened next, Robinson's testimony offered the following account. As the three drove to Mishawaka, Carrico shot Harmon. Carrico then drove to a pond by Lake Shore Estates and dragged Harmon out of the backseat of the car by himself. Carrico began hitting Harmon in the face—first with a car speaker, then with a rock. Carrico then pulled a tooth from Harmon's mouth and removed Harmon's clothes. After Robinson helped Carrico put Harmon's body in the water, Carrico took Harmon's clothes, cell phone, gold necklace, wallet, and money, and buried them in a wooded area.

A jury found Carrico guilty of murder, felony murder, and robbery. The trial court merged the felony murder and the murder conviction, reduced the robbery to a B felony, and imposed consecutive sentences of fifty-five years for the murder and ten years for the robbery.

**I. Indiana Double Jeopardy**

Citing *Richardson v. State*, 717 N.E.2d 32 (Ind.1999), Carrico argues that the murder and robbery convictions are the "same offense" under the "actual evidence" test. The elements of the charged murder were (1) knowingly or intentionally (2) killing (3) another human being. The elements of the B robbery were (1) knowingly or intentionally (2) taking property (3) from another person or from the presence of another person (4) by using or threatening the use of force on any person (5) while armed with a deadly weapon or resulting in bodily injury to any person other than the defendant. Ind.Code § 35-42-5-1 (1998). The jury was instructed that to find Carrico guilty of murder, the State must have proved that Carrico: (1) knowingly (2) acting alone or with an accomplice (3) killed Roderick Harmon. The jury was also instructed that in order to find Carrico guilty of robbery, it must find that the

State had established each of the following elements:

1. The defendant, Michael Carrico
2. knowingly
3. acting alone, or with an accomplice
4. while armed with a deadly weapon
5. took property from Roderick Harmon
6. by using force upon Roderick Harmon
7. by shooting Roderick Harmon
8. which caused serious bodily injury to Roderick Harmon.

The charging information, which was read to the jury as part of the instructions, charged Carrico with murder "by Shooting [Harmon] with a handgun, causing him to die." It also charged Carrico with robbery by knowingly taking "United States currency, from the presence of another person by force or threat of force, to-wit: by shooting Roderick Harmon with a handgun, which resulted in serious bodily injury to another person, to-wit: extreme pain to Roderick Harmon."

■ Carrico argues that the act necessary to prove murder, shooting Harmon with a handgun, was the same as the force proved as an element of the robbery. He contends his case is similar to *Richardson*, where convictions for robbery and battery were at issue and this Court vacated the battery conviction because the force used during the robbery (the beating of the victim) also constituted the battery. *Richardson* does not bar multiple convictions when the facts establishing one crime also establish only one or even several, but not all, of the elements of a second offense. *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002). That is the case here. Carrico's knowing killing of Harmon—by shooting the handgun—established one element of robbery (force) but not all. Accordingly,

conviction for both is consistent with *Richardson*.

■ There also is no violation under the rules of statutory construction and common law that coexist with the constitutional test set forth in *Richardson*. *See Pierce v. State*, 761 N.E.2d 826, 830 (Ind.2002). The trial court reduced the robbery from an A felony to a B felony by reason of the rule that the "harm" in this murder was the same bodily injury inflicted in the robbery. Enhancement of one offense for the very same harm as another is not permissible. *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind.2002) (citing *Richardson*, 717 N.E.2d at 56 (Sullivan, J., concurring)). But nothing prohibits conviction and sentencing for two crimes with a common element. Accordingly, there was no double jeopardy violation.

## II. Autopsy Photographs

■ Carrico contends the probative value of some autopsy photographs was substantially outweighed by their prejudicial effect. "Autopsy photographs are admissible if (1) they provide relevant evidence, and (2) their probative value is not substantially outweighed by their tendency to impassion the jury against the defendant." *Coy v. State*, 720 N.E.2d 370, 375 (Ind. 1999) (quoting *Malone v. State*, 700 N.E.2d 780, 783 (Ind.1998)). Four of the autopsy photographs admitted at trial depicted a metal rod that the forensic pathologist inserted through entrance and exit wounds on Harmon's body to demonstrate the paths the bullets went through the body. Carrico points out that, at trial, he did not contest the fact that Harmon had been shot numerous times with a nine-millimeter semi-automatic handgun or that Harmon died from those gunshot wounds. He also notes that the forensic pathologist testified that he had no way of knowing with any certainty exactly how either Harmon

or the shooter was positioned at the time the shots were fired.

A second autopsy photograph showed a metal screw that was embedded in Harmon's face. The forensic pathologist testified that the screw had nothing to do with Harmon's death, and that it appeared to be a freak occurrence rather than someone having intentionally placed the screw there. Carrico argues that revulsion at seeing these gruesome and inflammatory photographs depicting Harmon's injuries blown-up on a large screen television could have swayed the jury to ignore the huge credibility gaps in the State's case.

We agree that these photos appear to have minimal probative value. However, we think their admission was harmless error. Three witnesses testified that Carrico admitted killing the victim and gave details about the crime. Carrico also showed witnesses the murder weapon and the bloody money he had taken from Harmon. Robinson testified that he watched Carrico kill and beat the victim before helping Carrico put Harmon in the pond. Carrico's own videotaped statement to the police revealed his involvement in the murder. In light of this evidence, any error in the admission of the photographs is harmless.

### III. Consecutive Sentences

Carrico argues that the trial court erred in imposing consecutive sentences by finding that Harmon was in a position of trust with Carrico as an aggravating factor. He also contends that the trial court erred by failing to give appropriate weight, as a mitigating factor, to Carrico's lack of criminal record.

Carrico acknowledges that courts have found a position of trust as an aggravating circumstance in some situations, but he notes that most involved an adult or a person in a position of authority and a child or teenage victim—not peers.[1] Carrico argues that he was merely an acquaintance of Harmon's and had met Harmon only three to four times prior to the murder. Because we do not agree that the trial court found a separate aggravating factor in the relationship of the parties, we need not resolve that issue.

■ After setting forth Carrico's relative youth, remorse, and strong family support as mitigating factors, the court stated, "And then against all of that, I have to say probably the most striking factor about this case is the nature and circumstances of how it was committed." The court noted the brutality of the crime and stated its appreciation of Harmon's family and the way they conducted themselves during the trial. The court then stated, "I also find, particularly with respect to Mr. Robinson,[2] but also secondarily with respect to Mr. Carrico; [sic] is that Mr. Harmon was really both a friend and acquaintance of both of you, and you did violate that trust by doing what you did, for apparently no reason." The court then stated the possible motive. From this, it is not entirely clear to us that the trial court was relying on a "position of trust" as a separate aggravator. Given the placement of this dis-

1. *See Walter v. State*, 727 N.E.2d 443, 448 (Ind.2000) (where the victims were the defendant's wife and aunt); *Franklin v. State*, 715 N.E.2d 1237, 1242 (Ind.1999) (where defendant was victim's father); *Wesby v. State*, 535 N.E.2d 133, 137–38 (Ind.1989) (where victim was defendant's former girlfriend); *Van Martin v. State*, 535 N.E.2d 493, 498 (Ind.1989) (where defendant lived with the victim's fami-

ly and was babysitting for the victim); *Marshall v. State*, 643 N.E.2d 957, 963 (Ind.Ct. App.1994) (where defendant was a police officer who was counseling fourteen-year-old).

2. Carrico and Robinson were tried separately, but sentenced at the same sentencing hearing. *See Robinson v. State*, —— N.E.2d —— (Ind. 2002).

cussion—coming after the recitation of the crime's brutality and before the discussion of the crime's apparent motive—it seems to us that the trial court merely viewed this as another factor going to the disturbing nature and circumstance of the crime, and not as a separate aggravator.

■ Carrico also contends the trial court erred in refusing to accord significant mitigating value to his lack of prior criminal history. Although Carrico had no prior felony convictions, he did have a prior domestic violence battery conviction and a resisting law enforcement conviction, both of which were Class A misdemeanors. Carrico was, therefore, not wholly without a criminal history. The trial court did not err in according little weight to this record. *See Bunch v. State,* 697 N.E.2d 1255, 1258 (Ind.1998) (trial court considered defendant's lack of prior criminal history, but properly declined to accord it significant weight).

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.