**Ben ROBINSON, Jr., Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 71S00–0102–CR–102.

Supreme Court of Indiana.

Sept. 20, 2002.

Marce Gonzalez, Jr., Merrillville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

BOEHM, Justice.

Ben Robinson, Jr. was convicted of murder and robbery as a B felony and sentenced to sixty-five years in prison. In this direct appeal, Robinson contends: (1) he was denied effective assistance of counsel when his trial counsel failed to object to the court's erroneous re-instruction of the jury; (2) the convictions for murder and robbery violated the double jeopardy clause of the Indiana Constitution; and (3) the trial court abused its discretion by finding that the aggravating circumstances outweighed the mitigating circumstances and imposing consecutive sentences. We affirm.

**Factual and Procedural Background**

On the evening of May 6, 2000, Robinson and Michael Carrico left a party together in a Cutlass driven by Carrico, ostensibly to purchase liquor, but did not return. Around 10 p.m., Robinson arrived at the house of Roderick Harmon, his best friend since elementary school, and the two left to buy some marijuana.

The next day, the police received a report of a naked body, later identified as Harmon, floating in a pond near Lake Shore Estates. The police recovered shell casings on the ground nearby as well as three human teeth, a gold cross necklace, and a plastic cellphone case. Harmon had a fractured jaw and several lacerations and blunt force injuries to his head and face and four teeth were missing. He died from multiple gunshot wounds. Robinson was subsequently charged with murder, felony murder, and robbery as an A felony.

A witness testified that on the day Harmon's body was found, Robinson showed the witness a blood-stained $20 bill and told her it was "blood money" and that "Mike did something to somebody." Two other witnesses stated that on the same day, they went to Carrico's house and found Carrico cleaning blood from the backseat of the Cutlass. Carrico also showed them a gun, blood-stained money, and a human tooth.

David "Elijah" Shouse testified that on the day after Harmon's body was found, he drove Robinson and Carrico to a location behind an apartment complex where Robinson and Carrico walked into the woods carrying a shovel and a bag containing a nine-millimeter handgun and magazine, Harmon's cellphone, and Harmon's shoes and sweatshirt. About fifteen minutes later, the two came back carrying only the shovel. Robinson also asked Shouse to give him an alibi for the night of May 6.

Police later recovered the bag and determined that the bullets recovered from Harmon's body had been fired from the handgun in the bag. Carrico had shown the same gun to Shouse on May 7 and others had previously seen it in Robinson's possession.

Robinson told the police that he picked Harmon up around 8 or 9 p.m. on May 6, but dropped him off at 10 or 10:30. Robinson said he was with Shouse the rest of the night, but never mentioned being with Carrico at any point during the evening. Later that day, Robinson was rubbing his shoulder and Carrico's sister jokingly asked if the police had roughed him up during the interview. Robinson replied that he had beaten another person on the head.

Robinson was found guilty of murder, felony murder, and robbery. The court merged the felony murder with the murder conviction, reduced the A felony to a B, and imposed consecutive sentences of fifty-five years for murder and ten years for robbery.

## I. Ineffective Assistance of Counsel

After the jury retired to deliberate, the jury passed a note consisting of two questions, the second of which is at issue in this appeal. The jury stated, "We are having a problem with the word 'while' in the Fourth element. Could you explain [what] the word 'while' means." The trial court reconvened with counsel for both sides present, but outside the presence of the jury. On the record, the court noted that it "assumed" that the jury was looking at the fourth element in the felony murder charge, which provided that the State must prove beyond a reasonable doubt that Robinson killed Harmon "while committing or attempting to commit robbery."[1] The court also noted that in *Shultz v. State*, 417 N.E.2d 1127 (Ind.Ct.App.1981), the court held that a trial judge did not commit

---

1. Although no issue is raised on this point, the jury was also instructed on Count III, robbery as a Class A felony, which required the State to prove that the defendant knowingly took property by using force or shooting Harmon which resulted in serious bodily injury to Harmon. The fourth element in this instruction required proof beyond reasonable doubt that Robinson committed robbery "while armed with a deadly weapon."

reversible error by sending a dictionary to the jury after the jury had requested it, without first consulting the parties. The parties consented to the court responding by sending a note that stated, "The American Heritage Dictionary, Second College Edition, defines 'while' as follows—" and then photocopied the dictionary's definition of the word "while." [2] Robinson argues he was denied effective assistance of counsel because his trial counsel failed to object to this supplemental instruction.

■ Under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a claim of ineffective assistance of counsel requires a showing that: (1) counsel's performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms; and (2) counsel's performance so prejudiced the defendant that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052; *Lowery v. State,* 640 N.E.2d 1031, 1041 (Ind.1994). "[I]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Williams v. State,* 706 N.E.2d 149, 154 (Ind.1999) (quoting *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052). Robinson's claim fails this prong of *Strickland.*

In arguing his trial counsel's performance prejudiced his defense, Robinson cites *Faceson v. State,* 642 N.E.2d 985 (Ind.Ct.App.1994), which held that the trial court committed reversible error when it gave the jury additional instructions on the definitions of "dealing," "intent," "delivery," and "possession." Robinson argues that his defense was prejudiced because courts have previously held that giving supplemental instructions to a jury is reversible error. This claim addresses the performance prong. But Robinson offers no explanation how the court's response defining the word "while" using a dictionary prejudiced his defense. Moreover, the cited evidence of Robinson's participation in the murder is overwhelming, including both his own statements and physical evidence. We find no reasonable possibility that the instruction affected the jury's verdict.

## II. Indiana Double Jeopardy

■ Citing *Richardson v. State,* 717 N.E.2d 32 (Ind.1999), Robinson argues that the murder and robbery convictions are the "same offense" under the "actual evidence" test. The elements of the charged murder were (1) knowingly or intentionally (2) killing (3) another human being. The elements of the B robbery were (1) knowingly or intentionally (2) taking property (3) from another person or from the presence of another person (4) by using or threatening the use of force on any person (5) while armed with a deadly weapon or results in bodily injury to any person other than the defendant. Ind. Code § 35–42–5–1 (1998). The jury was instructed that to find Robinson guilty of murder, the State must have proved that Robinson: (1) knowingly (2) acting alone or with an accomplice (3) killed Roderick Harmon. The jury was also instructed that in order to find Robinson guilty of robbery, it must find that the State had established each of the following elements:

2. Specifically, while was defined as "while . . . *n.* 1. A period of time: *stay for a while; sang (all) the while.* 2. The time, effort, or trouble taken in doing something: *wasn't worth my while—conj.* 1. As long as; during that time that: *It was lovely while it lasted.* 2. Although; at the same time that: *While he loves his children, she is strict with them.* 3. Whereas: and: *The soles are leather while the uppers are canvas.—tr.* v. whiled, whiling, whiles. To spend (time) idly or pleasantly: *while the hours away.*"

1. The defendant, Ben Robinson
2. knowingly
3. acting alone, or with an accomplice
4. while armed with a deadly weapon
5. took property from Roderick Harmon
6. by using force upon Roderick Harmon
7. by shooting Roderick Harmon
8. which caused serious bodily injury to Roderick Harmon.

The charging information, which was read to the jury as part of the instructions, charged Robinson with murder "by Shooting [Harmon] with a handgun, causing him to die." It also charged Robinson with robbery by knowingly taking "United States currency, from the presence of another person by force or threat of force, to-wit: by shooting Roderick Harmon with a handgun, which resulted in serious bodily injury to another person, to-wit: extreme pain to Roderick Harmon."

■ Robinson argues that the act necessary to prove murder, shooting Harmon with a handgun, was the same as the force proved as an element of the robbery. He contends his case is similar to *Richardson*, where convictions for robbery and battery were at issue, and this Court vacated the battery conviction because the force used during the robbery (the beating of the victim) also constituted the battery. *Richardson* does not bar multiple convictions when the facts establishing one crime also establish only one or even several, but not all, of the elements of a second offense. *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002). That is the case here. Robinson's knowing killing of Harmon—by shooting the handgun—established one element of robbery (force) but not all. Accordingly, conviction of both is consistent with *Richardson*.

■ There also is no violation under the rules of statutory construction and common law that coexist with the constitutional test set forth in *Richardson*. *See Pierce v. State*, 761 N.E.2d 826, 830 (Ind.2002). The trial court reduced the robbery from an A felony to a B felony by reason of the rule that the "harm" in this murder was the same bodily injury inflicted in the robbery. Enhancement of one offense for the very same harm as another is not permissible. *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind.2002) (citing *Richardson*, 717 N.E.2d at 56 (Sullivan, J., concurring)). But nothing prohibits conviction and sentencing for two crimes with a common element. Accordingly, there was no double jeopardy violation.

Robinson also cites *Logan v. State*, 729 N.E.2d 125, 136–37 (Ind.2000), where this Court held that enhancement of an offense to a B felony by reason of bodily injury violates the double jeopardy clause when the defendant is also convicted of murder and the bodily injury is the death of the murder victim. This point is valid, but does not apply here. Robinson's robbery was not enhanced by bodily injury. The jury was instructed that to convict Robinson it must find that Robinson acted "while armed with a deadly weapon." Accordingly, enhancement of the offense to a B felony was proper.

### III. Consecutive Sentences

■ Robinson argues that the trial court erred in imposing consecutive sentences because neither of the aggravating circumstances identified by the trial court was supported by the record. Robinson first argues that the trial court erred in finding the nature and circumstance of the offense as an aggravating factor. Relying on *Morgan v. State*, 675 N.E.2d 1067 (Ind. 1996), where this Court held that facts which constitute the elements and commission of offenses may not be used to en-

hance a sentence, Robinson contends that the trial court did nothing more than recount the facts of the offenses of murder and robbery.

In sentencing both Robinson and Carrico,[3] the trial court stated, "[T]he fact that it is a murder case, and the fact that a person died, et cetera, is something that I cannot consider as an aggravating factor. But nonetheless, in this particular case this murder was particularly brutal." Noting that the victim was shot seven or eight times the court noted, "Essentially, what you two did individually and collectively, is empty every single bullet that you had the opportunity to empty from that gun into Mr. Harmon's body." It found "particularly troublesome" the "utter disregard for the sanctity" of the victim's body shown by Robinson after he killed the victim. The trial court noted that after killing the victim, Robinson "stripped him, robbed him, looted his body, and then dumped him in the lake." The trial court found that the "callousness ... demonstrated by those acts is just staggering." This conclusion by the court is sufficient to identify the "nature and circumstances" as an aggravating factor. *See Mitchem v. State,* 685 N.E.2d 671, 680 (Ind.1997) (number of times victim shot is proper consideration under "nature and circumstances" aggravator); *Cooper v. State,* 687 N.E.2d 350, 354 (Ind.1997) (looting victim's body proper consideration under "nature and circumstances" aggravator).

Robinson also contends that there were no facts to support Harmon's position of trust with Robinson as an aggravating factor. For the same reasons explained in *Carrico v. State,* 775 N.E.2d 312 (Ind. 2002), where the same issue was presented in the same sentencing hearing, we do not agree that the trial court found a position of trust as a separate aggravating factor.

■ Finally, Robinson contends the trial court erred in refusing to accord significant mitigating value to his lack of prior criminal history. Robinson argues that sentencing orders should distinguish between first offenders and repeat offenders, and that Indiana's Bill of Rights supports the opportunity for rehabilitation. Robinson had no prior felony convictions, one prior misdemeanor marijuana possession conviction and several traffic infractions, most of which had been dismissed. Although this is not a criminal history that supports a significant aggravating factor, neither is the trial court required to give significant mitigating weight to this record. *See Bunch v. State,* 697 N.E.2d 1255, 1258 (Ind.1998) (trial court considered defendant's lack of prior criminal history, but properly declined to accord it significant weight).

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.

---

**3.** Robinson and Carrico were tried separately, but sentenced at the same sentencing hearing.

*See Carrico v. State,* 775 N.E.2d 312 (Ind. 2002).