

I N T H E

# Court of Appeals of Indiana

Jeremiah Shanks,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Apr 29 2026, 8:45 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

April 29, 2026

Court of Appeals Case No.
25A-CR-1539

Appeal from the Marion Superior Court

The Honorable James K. Snyder, Judge

Trial Court Cause No.
49D32-2307-MR-21545

**Opinion by Judge Scheele**
Judge Felix concurs. Judge Brown dissents with a separate opinion.

**Scheele, Judge.**

## Case Summary

[1] In 2023, Jeremiah Shanks shot and killed Elijah Martin and then fled the scene with Martin's firearms. Shanks was later convicted of murder, Level 3 felony armed robbery, and Level 4 felony unlawful possession of a firearm by a serious violent felon. He now appeals, asserting his convictions for murder and armed robbery violate double jeopardy. We agree and reverse and remand for vacation of the armed robbery conviction.

## Facts and Procedural History

[2] In July 2023, Shanks and Martin were communicating regarding a potential gun sale. Martin agreed to sell Shanks a gun, and on July 12th they met at an apartment complex in Indianapolis to make the transaction. Shanks was armed with a firearm, and Martin had his personal firearm plus the gun he was planning to sell. Adrian Bond, a friend of Shanks, accompanied him for "protection[.]" Tr. Vol. IV p. 199. The three entered the apartment building's stairwell, and once inside Shanks shot Martin once in the chest. He and Bond then fled with Martin's firearms. Shortly after, Martin died.

[3] The State charged Shanks with two counts of murder, Level 2 felony robbery resulting in serious bodily injury, Level 3 felony armed robbery, and Level 4 felony unlawful possession of a firearm by a serious violent felon. A bifurcated

jury trial was held in May 2025.[1] The jury found Shanks guilty of the murder and robbery offenses and found that he was in possession of a firearm. The second phase of the trial was a bench trial, and the trial court determined Shanks was a serious violent felon and found him guilty of the Level 4 felony.

[4] At sentencing, the State argued,

> I would ask that the Court keep the judgment of conviction [] on Count I, the knowing murder. As such, we would need to vacate Count II, felony murder for double jeopardy purposes. I believe we also would need to then vacate Count III, the robbery resulting in serious bodily injury for double jeopardy concerns.
>
> But I would ask that the Court enter judgment of conviction as to Count IV, the armed robbery.

Tr. Vol. V p. 165. Shanks agreed, "it's appropriate to vacate Counts II and III." *Id.* at 171.

[5] The court vacated one of the murder convictions and the Level 2 felony robbery resulting in serious bodily injury conviction and sentenced Shanks to sixty-two years for murder, fourteen years for Level 3 felony armed robbery, and nine years for Level 4 felony unlawful possession of a firearm by a serious violent felon, to be served concurrently, for an aggregate sentence of sixty-two years

---

[1] The State charged Bond with murder, Level 2 felony robbery resulting in serious bodily injury, and Level 3 felony armed robbery. The jury found him guilty of Level 2 felony robbery resulting in serious bodily injury and Level 3 felony armed robbery but acquitted him of murder. The court entered judgment of conviction only as to the Level 2 felony robbery and sentenced him to twenty-three years executed in the Indiana Department of Correction. We recently affirmed Bond's conviction. *See* Case No. 25A-CR-1551.

executed in the Indiana Department of Correction. When asked, neither the State nor Shanks identified any legal defect in the sentence. Shanks now appeals.

## Discussion and Decision

[6] Shanks argues his convictions for murder and armed robbery constitute double jeopardy. As an initial matter, the State asserts we should decline to address this argument under the invited error doctrine. The invited error doctrine "forbids a party to 'take advantage of an error that [he] commits, invites, or which is the natural consequence of [his] own neglect or misconduct.'" *Brewington v. State*, 7 N.E.3d 946, 975 (Ind. 2014) (quoting *Wright v. State,* 828 N.E.2d 904, 907 (Ind. 2005)). Thus, invited error "typically forecloses appellate review altogether." *Batchelor v. State*, 119 N.E.3d 550, 556 (Ind. 2019). But to constitute invited error, there must be more than mere "passive lack of objection" or "acquiescence to an error introduced by the court or opposing counsel." *Id.* at 558 (quotation omitted). Rather, "there must be some evidence that the error resulted from the [defendant's] affirmative actions as part of a deliberate, 'well-informed' trial strategy." *Id.* (quoting *Brewington*, 7 N.E.3d at 954). Here, the State proposed to the trial court that it vacate Counts II and III but asserted the remaining convictions did not pose a double jeopardy concern. Shanks did not object to this, and when asked if there was any legal defect in the sentence, he stated there was not. *See* Tr. Vol. V p. 175. We see no evidence this was the result of deliberate, well-informed trial strategy; rather, it was a simple failure to object or, at most, an acquiescence to the alleged error. And while this neglect

would ordinarily constitute waiver, questions of double jeopardy implicate fundamental rights and thus may be raised for the first time on appeal or even by this court sua sponte. *See Ellis v. State*, 29 N.E.3d 792, 797 (Ind. Ct. App. 2015). As such, we will address Shanks' claim.

[7]     We review double jeopardy claims de novo. *McGuire v. State*, 263 N.E.3d 745, 749 (Ind. Ct. App. 2025), *trans. denied*. Where, as here, the claim involves a single criminal transaction that violates multiple statutes with common elements, we apply the analysis laid out in *Wadle v. State*, 151 N.E.3d 227, 237 (Ind. 2020).  First, we determine whether "the language of either statute clearly permits multiple punishment, either expressly or by unmistakable implication[.]" *Id.* at 248. If so, the inquiry is at an end and there is no double jeopardy violation. *Id.* But here, neither the murder statute nor the robbery statute permits multiple punishment. As such, we turn to *Wadle*'s next step.

[8]     Second, we determine whether the offenses are included "either inherently or as charged." *Id.* If neither offense is included in the other, again the inquiry ends and there is no double-jeopardy violation. *Id.*

> Included offenses come in two forms: inherently included offenses and offenses that are included as charged. An offense is inherently included if it meets the definition of "included offense" in Indiana Code Section 35-31.5-2-168. An offense is included as charged (or "factually included") if the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser included offense. In determining whether offenses are included as charged,

> we examine only the facts as presented on the face of the charging information.

*McGuire*, 263 N.E.3d at 749-50 (quotations omitted). Shanks acknowledges the offenses of murder and robbery do not meet the statutory definition of an "included offense" under Indiana Code section 35-31.5-2-168. However, he argues the offenses are factually included. "[W]hen assessing whether an offense is factually included, a court may examine only the **facts as presented on the face of the charging instrument.**" *A.W. v. State*, 229 N.E.3d 1060, 1067 (Ind. 2024) (emphasis in original). "This includes examining the 'means used to commit the crime charged,' which must 'include all of the elements of the alleged lesser included offense.'" *Id.* (quoting *Wadle,* 151 N.E.3d at 251).

[9] In *A.W.*, our Supreme Court clarified that, where ambiguities exist in a charging instrument about whether one offense is factually included in another, courts must construe those ambiguities in the defendant's favor and find a presumptive double jeopardy violation, although the State can later rebut this presumption. This is a protection for the defendant, as otherwise the State "could unilaterally decide how much to include (or not include) in the charging instrument, which could decisively determine the outcome of a double jeopardy claim." *Id.* at 1069.

[10] Turning to the charging information here, Count I, murder, reads as follows:

> On or about July 12, 2023, Jeremiah Shanks did knowingly kill another human being, to-wit: Elijah Martin;

Appellant's App. Vol. II p. 20 (formatting altered). The charging information for Count IV, Level 3 felony armed robbery, reads as follows:

> On or about July 12, 2023, Jeremiah Shanks did knowingly or intentionally take property, [] U.S. Currency and/or a firearm from Elijah Martin or the presence of Elijah Martin, by using force or by threatening the use of force by shooting at or against the person of Elijah Martin; while Jeremiah Shanks was armed with a firearm, a deadly weapon;

*Id.* at 21 (formatting altered).

[11] This Court recently addressed a similar charging situation in *Eversole v. State*, 251 N.E.3d 604 (Ind. Ct. App. 2025), *trans. denied*. There, the defendant was charged with murder and Level 2 felony attempted robbery. In determining whether the offenses were factually included, we stated:

> Here, aside from names and dates, the face of the State's charging information against Eversole on the murder charge simply tracks the statutory language for the offense. The face of the charging information for the Level 2 felony attempted robbery charge identified a series of alternative factual predicates, any one of which may have in fact been the means used to commit that offense. Those factual predicates included "the use of force" by Eversole and having "fired a handgun at David Carroll." The means used, on its face and when compared with the lack of detail included in the murder allegation, does not preclude any of the elements of the alleged murder. That is, one cannot tell from the face of the charging instrument whether the means used to commit the attempted robbery was necessarily something other than the murder. Accordingly, the manner in which the State drafted the information between those two

offenses created a rebuttable presumption of a substantive double jeopardy violation.

*Id.* at 608 (internal citations omitted); *see also Brothers v. State*, 271 N.E.3d 589 (Ind. Ct. App. 2025), *trans. pending.*[2]

[12] Similarly, here the charging information for murder simply tracks the statutory language, while the robbery charge alleges a threat or the use of force by shooting at Martin. Because of the way the information was drafted, one cannot necessarily tell whether the means used to commit the robbery was something other than murder. In other words, it is entirely possible on the face of this charging information that the use of force alleged in the robbery count was in fact the killing alleged in the murder count. This is an ambiguity that creates a rebuttable presumption of a substantive double-jeopardy violation. *See Vanbibber v. State*, 268 N.E.3d 315, 321 (Ind. Ct. App. 2025) ("An ambiguity exists if any conceivable facts from one charge include all the elements of the other charge." (quotation omitted, formatting altered)); *see also Bradshaw v. State*, 239 N.E.3d 864 (Ind. Ct. App. 2024) (charging information contains ambiguity where "the means used to commit the greater offense could have included all of the elements of the alleged lesser offense based on the face of the information").

---

[2] The dissent finds *Eversole* and *Brothers* distinguishable because the robbery offenses in both were Level 2 felonies—enhanced from Level 5 felonies due to the resulting serious bodily injury. Whereas here, Shanks' robbery charge was elevated to a Level 3 felony for being committed while armed with a deadly weapon. However, our analysis focuses on a common element—the force or threat of force. It is this element, as it is laid out in the charging information here and in *Eversole* and *Brothers*, that makes the information ambiguous, not the enhancing circumstances.

[13]     Thus, we proceed to the final step and give the State the opportunity to rebut the presumptive double jeopardy violation. To do so, "the State must demonstrate that it made clear to the fact-finder at trial that the apparently included charge was supported by independent evidence such that the State made a distinction between what would otherwise be two of the same offenses." *Eversole*, 251 N.E.3d at 608 (quotation omitted). To make this determination, we look to whether the defendant's actions were "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Wadle*, 151 N.E.3d at 249. However, if the State's evidence at trial "shows only a single continuous crime, and one statutory offense is included in the other," the State may not obtain cumulative convictions. *Ratliff v. State*, 242 N.E.3d 1070, 1079 (Ind. Ct. App. 2024) (quotation marks and brackets omitted), *trans. denied*.

[14]     Here, Shanks shot Martin, leaving him for dead, and then he and Bond took Martin's guns when they fled the scene. The State described the offense, which took place over forty-five seconds, in its closing statement as:

> They were robbing him, and [Shanks] chose to shoot him in the chest. The evidence in this case is overwhelming that both individuals were planning to commit a robbery, committed a robbery, and that Jeremiah Shanks killed Elijah in the process.

Tr. Vol. V p. 113. In effect, the State argued that the shooting, and ultimate killing, was the act which satisfied the element of "force" in the armed robbery charge. Accordingly, the facts used to support both charges "show only a single

continuous crime," *A.W.*, 229 N.E.3d at 1071 (quoting *Wadle*, 151 N.E.3d at 249), which was also compressed in time, place and singleness of purpose. As such, the State has failed to rebut the presumption that the two convictions violate double jeopardy.

[15] Shanks goes on to argue that, under Indiana Code section 35-38-1-6, it is the murder conviction, not the armed robbery conviction, that should be vacated. Section 35-38-1-6 provides when a defendant is found guilty of both an offense and an "included offense" in separate counts, "judgment and sentence may not be entered against the defendant for the included offense." But an included offense under the Indiana Code is one that:

> (1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;
>
> (2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or
>
> (3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

Ind. Code § 35-31.5-2-168 (2012). Here, the murder and robbery convictions are not included by statutory definition but rather included "as charged." *See A.W.*, 229 N.E.3d 1068 (noting that an offense can be included in two separate ways, under the statute or on the face of the charging information). As such, Section

35-38-1-6 does not apply. We therefore remand for vacation of the conviction with the lesser penalty—the Level 3 felony armed robbery conviction and its accompanying sentence. *See Eversole*, 251 N.E.3d at 609; *Wadle*, 151 N.E.3d at 256.

Reversed and remanded with instruction.

Felix, J., concurs. Brown, J., dissents with a separate opinion.

ATTORNEYS FOR APPELLANT

Talisha Griffin
Sarah Medlin
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Robert M. Yoke
Deputy Attorney General
Indianapolis, Indiana

**Brown, Judge, dissenting.**

[17] I respectfully dissent from the majority's conclusion that Shanks's convictions for robbery as a level 3 felony and murder violate double jeopardy.

[18] Under *Wadle*, we start with the statutory language of the offenses and, "[i]f the language of either statute clearly permits multiple punishment, either expressly or by unmistakable implication, the court's inquiry comes to an end and there is no violation of substantive double jeopardy." *A.W. v. State*, 229 N.E.3d 1060, 1066 (Ind. 2024) (quoting *Wadle v. State*, 151 N.E.3d 227, 248 (Ind. 2020) (footnote omitted)). "If the statutory language does not clearly permit multiple punishments, 'a court must then apply our included-offense statutes to determine **statutory intent**.'" *Id.* (quoting *Wadle*, 151 N.E.3d at 248 (emphasis added in *A.W.*)). "'If neither offense is an included offense of the other (either inherently or as charged), there is no violation of double jeopardy' and the analysis ends—full stop." *Id.* at 1067 (quoting *Wadle*, 151 N.E.3d at 248). But if one offense is included in the other, the court must proceed to Step 3. *Id.* In Step 3, "[i]f a court has found that one offense is included in the other—either inherently or as charged—the court must then (and only then) 'examine the **facts underlying those offenses**, as presented in the charging instrument and as adduced at trial.'" *Id.* at 1071 (quoting *Wadle*, 151 N.E.3d at 249 (emphasis added in *A.W.*)).

[19] With respect to the first step in *Wadle* of examining the statutory language to determine "[i]f the language of either statute clearly permits multiple

punishment, either expressly or by unmistakable implication," *Wadle*, 151 N.E.3d at 248, the offense under Count I, murder, is governed by Ind. Code § 35-42-1-1, which provides that "[a] person who: (1) knowingly or intentionally kills another human being . . . commits murder, a felony." The offense under Count IV, armed robbery as a level 3 felony, is governed by Ind. Code § 35-42-5-1, which provides that "a person who knowingly or intentionally takes property from another person or from the presence of another person: (1) by using or threatening the use of force on any person; . . . commits robbery, a Level 5 felony. However, the offense is a Level 3 felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant . . . ." The State concedes that "[n]either murder nor armed robbery clearly permit multiple punishments." Appellee's Brief at 21.

[20] With no statutory language clearly permitting multiple convictions, the second step requires analyzing the offenses charged under our included-offense statutes. *See Wadle*, 151 N.E.3d at 254 ("With no statutory language clearly permitting multiple convictions, we now analyze the offenses charged under our included-offense statutes."). In addressing the second step, the *A.W.* Court stated that "'[i]f neither offense is an included offense of the other (either inherently or as charged), there is no violation of double jeopardy' and the analysis ends—full stop." *A.W.*, 229 N.E.3d at 1067 (quoting *Wadle*, 151 N.E.3d at 248). The *A.W.* Court also held:

> *Wadle* does not define the meaning of "as charged." *See* 151 N.E.3d at 248. But this phrase makes more sense when analyzed

at Step 2 within the factually included inquiry. These two concepts—as charged and factually included—should be treated as synonymous under *Wadle*: "the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser included offense." *Id.* at 251 n.30 (quoting *Young* [*v. State*, 30 N.E.3d 719, 724 (Ind. 2015)] (cleaned up)).

But that leaves us with another open question about the scope of the factually included inquiry at Step 2. We conclude that when assessing whether an offense is factually included, a court may examine only the **facts as presented on the face of the charging instrument**. This includes examining the "means used to commit the crime charged," which must "include all of the elements of the alleged lesser included offense." *Id*. Step 2 has core constraints: it does not authorize courts to probe other facts, such as evidence adduced from trial. *Cf. Phillips* [*v. State*, 174 N.E.3d 635, 647 (Ind. Ct. App. 2021)]. The factually included inquiry at this step is thus limited to facts on the face of the charging instrument. Otherwise, Step 2 would be another formulation of the now-retired *Richardson* approach.[3] *Richardson*'s "either/or" regime was rejected because it gave courts **options**, which thus led to a selective application of "one test over another." *Wadle*, 151 N.E.3d at 241. Using their discretion, courts typically focused on actual evidence rather than the statutory elements, which led to a mélange of inconsistency.

\* \* \* \* \*

Inconsistency breeds confusion, and confusion imperils the rule of law. In addressing this axiom, *Wadle* attempted to combat any potential legitimacy concerns by restoring order to Indiana's double jeopardy jurisprudence: it focused on the included-offense statute. *See* 151 N.E.3d at 235. *Wadle* thus assigned the

---

[3] *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999).

> "underlying" factual inquiry—which includes evidence from trial—to Step 3. *Id.* at 249. In other words, Step 3 is authorized, but only if one offense is included in the other under Step 2. *Wadle* contains clear stopping points in its analytical sequence: if Step 2 is **not** met, the analysis **ends**. We thus conclude that courts must confine their Step 2 analysis to (1) the included-offense statute (whether the offenses are "inherently" included), and (2) the face of the charging instrument (whether the offenses "as charged" are factually included).

*Id.* at 1067-1068. The Court stated that "Step 2 does **not** allow courts to examine evidence adduced at trial, but only facts presented in the charging instrument, including the 'means used.'" *Id.* at 1068-1069 (quoting *Wadle*, 151 N.E.3d at 251 n.30). The Court held that "where ambiguities exist in a charging instrument about whether one offense is factually included in another, *see Harris* [*v. State*, 186 N.E.3d 604 (Ind. Ct. App. 2022)], courts must construe those ambiguities in the defendant's favor, and thus find a presumptive double jeopardy violation at Step 2," and, "[i]n this event, the State can later rebut this presumption at Step 3." *Id.* at 1069.

[21] Ind. Code § 35-38-1-6 provides that "[w]henever: (1) a defendant is charged with an offense and an included offense in separate counts; and (2) the defendant is found guilty of both counts; judgment and sentence may not be entered against the defendant for the included offense." Ind. Code § 35-31.5-2-168 provides:

> "Included offense" means an offense that:

(1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;

(2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or

(3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

Shanks "concedes the offense of murder is not inherently included in the offense of armed robbery." Appellant's Brief at 7. Rather he argues that murder "is included as charged." *Id.*

[22] With respect to Shanks's alternate argument that armed robbery is an included offense of murder as charged, he points to subsection 3 of Ind. Code § 35-31.5-2-168 and argues that armed robbery is an included offense of murder because, "[w]hile a basic robbery charge does not meet this definition in relation to a murder charge, the element that elevates the crime to armed robbery does." *Id.* at 11. Specifically, he asserts that "[r]obbery is ordinarily a Level 5 felony but is elevated to a Level 2 felony if 'committed while armed with a deadly weapon.'" *Id.* (citing Ind. Code § 35-42-5-1). He argues that "[t]his elevation contemplates the elevated risk of bodily harm to the person being robbed." *Id.* He also asserts that "being armed was the 'means used' of committing the crime of murder" and his "conviction for armed robbery is factually included in the conviction for murder." *Id.*

[23] To the extent Shanks asserts that robbery is elevated to a level 2 felony if committed while armed with a deadly weapon, I disagree. Ind. Code § 35-42-5-1 provides that "a person who knowingly or intentionally takes property from another person or from the presence of another person: (1) by using or threatening the use of force on any person; . . . commits robbery, a Level 5 felony. However, the offense is a *Level 3 felony* if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant . . . ." (Emphasis added). It also provides that "the offense is . . . a Level 2 felony if it results in serious bodily injury to any person other than a defendant." Ind. Code § 35-42-5-1. As for his contention that armed robbery as a level 3 felony is a lesser included offense of murder under subsection (3) of Ind. Code § 35-31.5-2-168, I cannot say that armed robbery differs from the offense of murder only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission. Thus, I would turn to whether murder is an included offense of armed robbery as a level 3 felony as charged and Shanks's alternative argument of whether armed robbery as a level 3 felony is an included offense of murder as charged.

[24] Mindful of the modification in Step 2 as discussed in *A.W.*, in Count I, murder, the State alleged that "[o]n or about July 12, 2023, [Shanks] did knowingly kill another human being, to-wit: Elijah Martin." Appellant's Appendix Volume II at 18. In Count IV, armed robbery as a level 3 felony, the State alleged that "[o]n or about July 12, 2023, [Shanks] did knowingly or intentionally take

property, a[] U.S. Currency and/or a firearm from Elijah Martin or the presence of Elijah Martin, by using force or by threatening the use of force by shooting at or against the person of Elijah Martin; while [Shanks] was armed with a firearm, a deadly weapon." *Id.* at 18-19. The *A.W.* Court held: "[W]hen assessing whether an offense is factually included, a court may examine only the **facts as presented on the face of the charging instrument**. This includes examining the 'means used to commit the crime charged,' which must 'include all of the elements of the alleged lesser included offense.'" *A.W.*, 229 N.E.3d at 1067 (quoting *Wadle*, 151 N.E.3d at 251 n.30).

[25] If the "means used" in the armed robbery must include all of the elements of the alleged lesser included offense, then an examination of whether the "means used" in the armed robbery included all of the elements of the alleged lesser included offense of murder is necessary. I cannot say that the "means used to commit" armed robbery "include all of the elements" of murder as the charging information for armed robbery did not include a knowing or intentional killing or even any injury to Martin. Indeed, the charging information for Count IV, armed robbery, indicates that the offense was not enhanced to a level 3 felony based upon any bodily injury but was raised to a level 3 felony based upon the allegation that Shanks was armed with a deadly weapon. Neither the statute governing armed robbery as a level 3 felony when based upon being armed with a deadly weapon nor the charging information for the armed robbery required that Shanks injured or knowingly or intentionally killed Martin. Accordingly, I cannot conclude that murder is an included offense of armed robbery. I also

cannot say that armed robbery as charged is an included offense of murder or that the "means used" in the murder included all of the elements of the alleged lesser included offense of armed robbery. Accordingly, I would end the analysis here and conclude that Shanks's convictions do not violate *Wadle*. *See id.* ("'If neither offense is an included offense of the other (either inherently or as charged), there is no violation of double jeopardy' and the analysis ends—full stop.") (quoting *Wadle*, 151 N.E.3d at 248).

[26] The majority states that "it is entirely possible on the face of this charging information that the use of force alleged in the robbery count was in fact the killing alleged in the murder count" and that "the murder and robbery convictions are not included by statutory definition but rather included 'as charged.'" Slip op. at 8, 10. I do not agree or believe that murder is a lesser included offense of armed robbery in this case. Rather, I conclude that the majority's approach expands *A.W.* beyond its intent.

[27] To the extent that the majority cites *Eversole v. State*, 251 N.E.3d 604 (Ind. Ct. App. 2025), *trans. denied*, and *Brothers v. State*, 271 N.E.3d 589 (Ind. Ct. App. 2025), *trans. pending*, *Eversole* and *Brothers* both addressed an attempted robbery or robbery conviction that were elevated to level 2 felonies because the victim suffered a serious bodily injury. Unlike in *Eversole* and *Brothers*, the conviction in the present case is a level 3 felony based upon Shanks being armed with a deadly weapon. Thus, I find *Eversole* and *Brothers* distinguishable.

Additionally, I observe that, although prior to *Wadle*, the Indiana Supreme Court has repeatedly held that convictions for murder and robbery enhanced on the basis of being armed with a deadly weapon are not problematic. *See Carrico v. State*, 775 N.E.2d 312, 314 (Ind. 2002) (addressing defendant's argument that "the act necessary to prove murder, shooting Harmon with a handgun, was the same as the force proved as an element of the robbery," holding that "Carrico's knowing killing of Harmon—by shooting the handgun—established one element of robbery (force) but not all" and "[a]ccordingly, conviction for both is consistent with *Richardson*," holding that there was no violation under the rules of statutory construction and common law because "[t]he trial court reduced the robbery from an A felony to a B felony by reason of the rule that the 'harm' in this murder was the same bodily injury inflicted in the robbery," stating that "[e]nhancement of one offense for the very same harm as another is not permissible . . . [b]ut nothing prohibits conviction and sentencing for two crimes with a common element," and concluding that "there was no double jeopardy violation"); *Robinson v. State*, 775 N.E.2d 316, 320 (Ind. 2002) ("Robinson argues that the act necessary to prove murder, shooting Harmon with a handgun, was the same as the force proved as an element of the robbery. . . . Robinson's knowing killing of Harmon—by shooting the handgun—established one element of robbery (force) but not all. . . . There also is no violation under the rules of statutory construction and common law . . . . The trial court reduced the robbery from an A felony to a B felony by reason of the rule that the 'harm' in this murder was the same bodily injury inflicted in the robbery. . . . [N]othing prohibits conviction and sentencing for two crimes with a common

element. Accordingly, there was no double jeopardy violation. Robinson also cites *Logan v. State,* 729 N.E.2d 125, 136-37 (Ind. 2000), where this Court held that enhancement of an offense to a B felony by reason of bodily injury violates the double jeopardy clause when the defendant is also convicted of murder and the bodily injury is the death of the murder victim. This point is valid, but does not apply here. Robinson's robbery was not enhanced by bodily injury. The jury was instructed that to convict Robinson it must find that Robinson acted 'while armed with a deadly weapon.' Accordingly, enhancement of the offense to a B felony was proper.");[4] *Booher v. State*, 773 N.E.2d 814, 823 (Ind. 2002)

---

[4] In *Wadle*, the Court commented on *Carrico* and *Robinson* under the heading "The 'same offense' test in *Richardson v. State* created more confusion than clarity," as follows:

> This has left the actual-evidence test vulnerable to arbitrary application. In *Hines v. State*, for example, this Court found a double-jeopardy violation "because the facts establishing criminal confinement would also establish battery," even though the facts establishing the latter offense would not have established the former offense. 30 N.E.3d 1216, 1222 (Ind. 2015). *See also Bradley v. State*, 867 N.E.2d 1282, 1284–85 (Ind. 2007) (same). But in *Carrico v. State*, this Court found no double-jeopardy violation where evidence establishing murder established only one element of B felony robbery, even though evidence establishing the latter crime may have established the former. 775 N.E.2d 312, 314 (Ind. 2002). *See also Robinson v. State*, 775 N.E.2d 316, 320 (Ind. 2002) (same).

151 N.E.3d at 240, 243.

In *A.W.*, the Court commented on *Carrico* in a discussion of the scope of the factually included inquiry at Step 2. 229 N.E.3d at 1067-1068. Specifically, the Court observed:

> The factually included inquiry at this step is thus limited to facts on the face of the charging instrument. Otherwise, Step 2 would be another formulation of the now-retired *Richardson* approach. *Richardson*'s "either/or" regime was rejected because it gave courts **options**, which thus led to a selective application of "one test over another." *Wadle*, 151 N.E.3d at 241. Using their discretion, courts typically focused on actual evidence rather than the statutory elements, which led to a mélange of inconsistency. *Compare Hines v. State*, 30 N.E.3d 1216, 1222 (Ind. 2015) (double jeopardy violation existed "because the facts establishing criminal confinement would also establish battery[,]" though the facts establishing the latter offense would not have established the former), *with Carrico v. State*, 775 N.E.2d 312, 314 (Ind. 2002) (no double jeopardy violation where evidence establishing murder established only one element of B felony robbery, even though evidence establishing the latter crime may have established the former).

("Because these enumerated elements separately included 'while armed with a deadly weapon,' we are convinced that the reduction of robbery from a class A felony to a class B felony was thus supported by the jury's determination of guilt in accordance with the enumerated elements listed in the instructions. His conviction of robbery as a class B felony is thus not based upon the 'serious bodily injury element' upon which the defendant bases his double jeopardy argument."); *Gross v. State*, 769 N.E.2d 1136, 1138-1140 (Ind. 2002) (addressing defendant's argument that he could not be convicted for both murder and robbery as a class A felony because both crimes were enhanced by the same bodily injury, observing that the State charged the defendant with both the bodily injury variety of class B felony robbery as well as the armed with a deadly weapon variety of the offense, observing that the jury was instructed on the elements of both varieties of robbery as a class B felony, vacating the defendant's sentence for robbery as a class A felony, and remanding to the trial court for a new sentencing order that imposes sentence for robbery as a class B felony);[5] *see also Francis v. State*, 758 N.E.2d 528, 534 (Ind. 2001) ("As charged,

---

*Id.* I cannot say that the mention of *Carrico* and *Robinson* in *Wadle* or the mention of *Carrico* in *A.W.* require reversal in this case.

[5] In *Wadle*, the Court spoke critically of *Gross*. Specifically, the *Wadle* Court held:

> In *Gross v. State*, the defendant appealed his convictions for murder and robbery as a Class A felony, arguing that evidence of the same bodily injury (the victim's death) impermissibly elevated both offenses. 769 N.E.2d 1136, 1138 (Ind. 2002). The Court initially concluded that the evidence proving the elements of murder fell short of proving **each** element of robbery as a Class A felony (specifically, the knowing or intentional taking of property from another person). *Id.* at 1139. Under *Spivey* [*v. State*, 761 N.E.2d 831 (Ind. 2002),] then, the Court found no double-jeopardy violation. *Id.* But that didn't end the inquiry. In reversing its method of analysis, the Court went on to find a "reasonable possibility" that

it is apparent that the bodily injury variety of Class B felony robbery is an inherently included lesser offense of robbery as a Class A felony. However, as the trial court correctly determined, because death of the victim supported the murder conviction as well as elevating robbery to a Class A felony, principles of double jeopardy prohibited sentencing Francis to A felony robberies. The same double jeopardy concerns are posed by sentencing Francis *to the bodily injury variety of Class B felony robbery*.") (emphasis added).

[29]    I also note that *Wadle* and *A.W.* dealt with relatively straightforward double jeopardy issues, which are fundamentally different than the present case. In *Wadle*, the Court discussed the defendant's convictions for leaving the scene of an accident and OWI causing serious bodily injury (or OWI-SBI). 151 N.E.3d at 253. The Court observed:

> An "operator of a motor vehicle" commits the first offense, a Class B misdemeanor, when he or she "knowingly or

---

the jury relied on evidence "establishing **all** the essential elements of robbery as a Class A felony to establish also **all** the essential elements of murder." *Id.* (emphasis added).

The problem with *Gross*, other than its analytical infidelity to *Spivey*, is that it renders the survival of a defendant's double-jeopardy challenge contingent on the **sequence of analysis** rather than any underlying principled legal theory. This has left the actual-evidence test vulnerable to arbitrary application.

151 N.E.3d at 243 (footnotes omitted). In a footnote, the *Wadle* Court stated:

As noted above, *Spivey* found no double-jeopardy violation because the evidence establishing the elements of one offense established **less than all** the elements of a second offense. 761 N.E.2d at 833-34. *Gross*, on the other hand, effectively **permits** conviction for two offenses—Crime A and Crime B—if the evidence used to prove the elements of Crime A also prove the elements of Crime B, even when Crime B requires additional evidence to prove Crime A.

*Id.* at 243 n.14. I cannot say that this comment on *Gross* requires reversal.

intentionally" leaves the scene of an accident without providing the necessary information and assistance. I.C. § 9-26-1-1.1(a), (b) (2015 Supp.). This offense becomes a Level 3 felony when, as here, the operator leaves the scene of an accident "during or after the commission of the offense of operating while intoxicated causing serious bodily injury (IC 9-30-5-4)." I.C. § 9-26-1-1.1(b)(4). The second offense, OWI-SBI, occurs when a person "causes serious bodily injury to another person when operating a vehicle . . . while intoxicated." I.C. § 9-30-5-4(a) (2014). This offense rises from a Level 6 felony to a Level 5 felony if, at the time of committing the offense, the person had been convicted of OWI within the preceding five years. *Id.*

* * * * *

[B]oth statutes involve operating a vehicle while intoxicated resulting in serious bodily injury. The only difference is that one offense (OWI-SBI) creates "a less serious harm or risk of harm to the same person, property, or public interest" than the other offense (leaving the scene "during or after" OWI-SBI). *See* I.C. § 35-31.5-2-168(3). *See also Sering v. State*, 488 N.E.2d 369, 376 (Ind. Ct. App. 1986) (the offense of "operating a vehicle with BAC of .10% is a lesser included offense" of OWI "because the former offense [a class C misdemeanor] differs from the latter offense [a class A misdemeanor] in that a less serious risk of harm to the public interest is required to establish its commission"). Given the "disparate classification of the two offenses," *see id.*, we conclude that Level 5 felony OWI-SBI is included in (*i.e.*, is the "same" as) the offense of Level 3 felony leaving the scene of an accident.

*Id.* at 253-254 (footnote omitted).

[30] In *A.W.*, the Court addressed two adjudications both of which were based upon mere possession. Specifically, the Court addressed "adjudications for

possession of a machine gun, a Level 5 felony if committed by an adult, and dangerous possession of a firearm, a Class A misdemeanor." 229 N.E.3d at 1062. The Court held that "dangerous possession of a firearm is 'inherently included' within possession of a machine gun." *Id.* at 1072. The Court rejected the State's contention that the two offenses address separate harms because "being a juvenile in possession is 'a less serious harm . . . to the . . . public interest' than possession of a machine gun." *Id.* The Court also reviewed the charging information and found that "these offenses are also 'factually included' because they punish the same conduct as charged against A.W. in the juvenile delinquency proceeding." *Id.*

[31] While I believe the process stops at Step 2, I note that when the Indiana Supreme Court discussed Step 3 in *Wadle*, it stated:

> Once a court has analyzed the statutory offenses charged, it must then examine the facts underlying those offenses, as presented in the charging instrument and as adduced at trial. *Bigler* [*v. State*, 602 N.E.2d 509, 521 (Ind. Ct. App. 1992), *reh'g denied, trans. denied*]. Based on this information, a court must ask whether the defendant's actions were "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Walker v. State*, 932 N.E.2d 733, 735 (Ind. Ct. App. 2010), [*reh'g denied,*] *cited with approval by Hines*, 30 N.E.3d at 1219.

151 N.E.3d at 249 (footnotes omitted). In a footnote, the Court observed:

> The continuous-crime doctrine is "a rule of statutory construction and common law" applicable to "situations where a defendant has been charged multiple times with the **same**

**offense**," rather than with "two distinct chargeable crimes." *Hines*, 30 N.E.3d at 1219 (emphasis added) (citations omitted). *See also Walker*, 932 N.E.2d at 737 (noting that the doctrine encompasses charges against a defendant for "an offense and a lesser included offense").

*Id.* at 249 n.26. Thus, Step 3 of *Wadle* requires an examination of "the underlying facts—as presented in the charging instrument and adduced at trial—to determine whether a defendant's actions were 'so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction.'" *A.W.*, 229 N.E.3d at 1071 (quoting *Wadle*, 151 N.E.3d at 249). However, courts have held that the continuous crime doctrine does not apply to murder and robbery. *See Diaz v. State*, 158 N.E.3d 363, 368-370 (Ind. Ct. App. 2020) (addressing pre-*Wadle* law and holding that "[m]urder and robbery are two distinct chargeable crimes to which the continuous-crime doctrine does not apply"; and undertaking an analysis under *Wadle* and holding: "Because neither murder nor Level 5 felony robbery is included in the other, Diaz's convictions do not constitute double jeopardy under *Wadle*, and there is no need to further examine the specific facts of the case under the third step of the test.");[6] *see also Robinson v. State*, 693 N.E.2d 548, 551, 554 n.2 (Ind. 1998) (addressing convictions for intentional murder and robbery of the same

---

[6] In *Hines*, the Indiana Supreme Court observed: "We have applied the continuous crime doctrine in the context of *felony murder and robbery*, confinement, and kidnapping; situations where the crime charged, as defined by statute, was 'continuous.'" 30 N.E.3d at 1219-1220 (emphasis added and footnote omitted). The present case does not involve a conviction for felony murder.

victim, affirming, and noting that "[t]he spirit of our criminal law would not be fostered by a ruling that Robinson could not be convicted of robbing a man he had just killed"), *disapproved of on other grounds by Minges v. State*, 192 N.E.3d 893 (Ind. 2022). Accordingly, I conclude that Step 3 as outlined in *Wadle* would not result in reversal because murder and robbery are two distinct chargeable crimes to which the continuous crime doctrine does not even apply and that this idea buttresses the conclusion that murder is not a lesser included offense of armed robbery under Step 2. I would find no double jeopardy violation and affirm Shanks's convictions.